United States District Court
Southern District of Texas

**ENTERED**

May 06, 2020

David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| AGUACATES SELECCIONADOS JBR USA, LLC, | § § § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 7:19-CV-338 |
| | § | |
| BUCKS FRESH PRODUCE, LLC, *et al*, | § § | |
| Defendants. | § § | |

## OPINION & ORDER

The Court now considers the "Motion for Default Judgment Against Defendants"[1] filed by Aguacates Seleccionados JBR USA, LLC ("Plaintiff") against Bucks Fresh Produce, LLC ("Defendant BFP"); Christopher Torres, Individually ("Defendant Christopher Torres"); Christopher Torres, as Co-Trustee of C&D Holdings, a Revocable Trust; Diana De Jesus Flores Cavazos, a/k/a Diana Torres, Individually ("Defendant Diana Torres"); and Diana De Jesus Flores Cavazos a/k/a Diana Torres, as Co-Trustee of C&D Holdings, a Revocable Trust (hereafter, collectively, "Defendants"). After duly considering the record and relevant authorities, the Court **GRANTS IN PART** and **DENIES IN PART** Plaintiff's motion.

### I.    BACKGROUND

Plaintiff brings this suit under the Perishable Agricultural Commodities Act, 1930 ("PACA") for breach of a series of produce contracts.[2] Plaintiff and Defendant BFP are both "dealers" that engage in the business of buying and selling wholesale quantities of perishable

---

[1] Dkt. No. 15.
[2] Dkt. No. 1 at 1, ¶ 1.

agricultural commodities in interstate commerce and are licensed under PACA.[3] Both Plaintiff and Defendant BFP have principal places of business in McAllen, Texas.[4] Plaintiff alleges Defendants Christopher and Diana Torres are "officer[s], directors[s], shareholder[s], member[s], and/or manager[s]" of Defendant BFP.[5] Plaintiff is suing Defendants Christopher Torres and Diana Torres in both their individual capacities, and their capacities as co-trustees of C&D Holdings, a revocable trust.

In essence, Plaintiff now seeks to recover $610,960.00, the amount unpaid by Defendants on various invoices for produce sold to Defendant BFP between October 2, 2017 and January 8, 2018.[6] Plaintiff alleges that between October 2, 2017 and January 8, 2018, Plaintiff "sold and shipped to [Defendant BFP] at [Defendant BFP's] request, perishable agricultural commodities for agreed upon selling prices."[7] While Plaintiff does not provide the details of the parties' transactions, Plaintiff appears to allege that Defendants Christopher and Diana Torres, acting on behalf of Defendant BFP, agreed to purchase the produce.[8] Plaintiff further alleges that "Defendants accepted said shipments"[9] and failed to remit any payments, even after Plaintiff sent all invoices to Defendant BFP and "repeatedly demanded that [Defendant BFP] pay the sums

---

[3] *Id.* at 2, ¶¶ 4–5. A dealer under PACA is defined as "any person engaged in the business of buying or selling in wholesale or jobbing quantities . . . any perishable agricultural commodity in interstate or foreign commerce." 7 U.S.C. § 499(a). A person or entity is also a dealer under PACA if they are properly licensed pursuant to Section 499c of the statute. *Id.*

[4] Dkt. No. 1 at 2, ¶¶ 4–5.

[5] *Id.* at 2–3, ¶¶ 6–7. Plaintiff provides that Defendants Christopher and Diana Torres "at all times herein were insiders with actual and constructive knowledge of the PACA trust and the provisions set forth therein and were responsible for the daily management and control of [Defendant BFP]" *Id.* at 3, ¶ 8.

[6] Dkt. No. 15 at 2, ¶ 4.

[7] Dkt. No. 1 at 3, ¶ 10.

[8] Plaintiff does not specifically allege that Defendants Christopher and Diana Torres agreed to the produce transactions themselves or that they accepted shipment on behalf of Defendant BFP. However, Plaintiff seems to imply as such when it discusses the relationship between Defendant Christopher and Diana Torres and Defendant BFP as it pertains to PACA. For example, in the complaint Plaintiff provides that Defendants Christopher and Diana Torres "held themselves out publicly to be principals of [Defendant BFP] as stated on [Defendant BFP's] PACA licenses issued by the U.S. Department of Agriculture and were statutory trustees under the PACA in positions to control the PACA trust assets that are the subject of this lawsuit." *Id.* at 3, ¶ 9.

[9] *Id.* at 3, ¶ 10.

2 / 26

that are due and owing under these invoices."[10] Plaintiff attaches the invoices for the Court's review, which demonstrate multiple shipments of avocados.[11]

On July 9, 2018, after Defendants allegedly failed to remit payment, Plaintiff initiated a formal complaint with the U.S. Department of Agriculture ("USDA") seeking to recover the sums owed under PACA.[12] On December 11, 2018, the parties entered into a Settlement Agreement and Stipulation for Entry of Judgment (hereafter, "Agreement"), which Plaintiff attaches for the Court's review.[13] The Agreement is signed by all Defendants, including Defendants Christopher and Diana Torres in their individual capacities and their capacities as co-trustees of C&D Holdings.[14] Therein, Defendants stipulate to the facts as described in this Order.[15] In order to "avoid the further expense and uncertainty of litigation," Defendants agreed to remit a settlement amount totaling $605,040.00 in installments to be paid to Plaintiff on specified dates.[16] Defendants' first payment under the Agreement for $25,000.00 was due to Plaintiff on January 15, 2019.[17]

In the Agreement, Plaintiff does not agree to settle all disputes or forego future claims against Defendants. Rather, Plaintiff agrees to dismiss the formal USDA complaint against Defendants "without prejudice, subject to reopening to enforce or interpret this Agreement and or to enter and enforce the judgment contemplated" by the Agreement.[18] The Agreement

---

[10] *Id.* at 4, ¶¶ 13–14.
[11] *See generally* Dkt. No. 15-8.
[12] Dkt. No. 1 at–5, ¶ 19.
[13] *See* Dkt. No. 15-12.
[14] *Id.* at 11.
[15] *Id.* at 3, ¶¶ iv–xii.
[16] *Id.* at 4–5, ¶¶ 1–5. Pursuant to the Agreement, the total settlement amount of $605,040.00 "is comprised of the undisputed principal amount of $595,040.00, plus $20,000.00 in attorney's fees, plus interest at 18% per annum." *Id.* at 4, ¶ 3. Defendants were required to pay monthly payments of $25,000.00 from January 15, 2019 to April 15, 2019; a payment of $50,000.00 by May 15, 2019; a payment of $75,000.00 by June 15, 2019; monthly payments of $80,000.00 from July 15, 2019 to September 15, 2019; monthly payments of $40,000.00 from October 15, 2019 to May 15, 2020; and a final payment of $38,960.64 by June 15, 2020. *Id.* at 3–4, ¶ 4.
[17] *Id.* at 4, ¶ 4(a).
[18] *Id.* at 6, ¶ 11.

provides that "[n]othing in this Agreement shall be deemed a waiver or limitation of any rights [Plaintiff] may have under PACA. . ." The Agreement further specifies that Plaintiff's willingness to accept the payments owed by Defendants in installments "does not in any way vitiate or diminish the PACA trust rights [Plaintiff] is entitled to assert against [Defendants]."[19]

In the event Defendants were to default under the Agreement, Defendants agreed to allow joint and several judgment to be entered against them in a United States District Court for the Southern District of Texas on an *ex parte* basis, for the settlement amount of $605,040.00 plus pre-judgment and post-judgment interest at 18% annum, filing fees, attorneys' fees, and any additional fees and costs incurred in obtaining and enforcing said judgment.[20]

The Agreement also provides that should Defendants default on its terms, the Agreement is secured by Defendants' assets, which are more specifically described in the Agreement and include "the Texas Warehouse and Mexico Farmland."[21] Plaintiff alleges that in addition to the Agreement, Defendants executed a Deed of Trust on two properties: one in McAllen, Texas, presumably the "Texas Warehouse;" and one in Saltillo, Mexico, presumably the "Mexico Farmland."[22] However, Plaintiff only attaches a Deed of Trust evidencing a conveyance of the McAllen property.[23] The Deed of Trust for the McAllen property was recorded in the Official

---

[19] *Id.*

[20] *See id.* at 6, ¶ 8.

[21] *Id.* ¶ 10.

[22] *Id.* at 6–7, ¶ 10; *see* Dkt. No. 15-13 (Deed of Trust).

[23] Plaintiff provides in the complaint that the Deed of Trust is "on certain real property located at 2501 West Military Highway, Suite A18, McAllen, Texas 78503 and fraccion "B" del lote de terreno ubicado en la ex Hacienda de Encarnacion de Guzman, municipality of Saltillo, Mexico." Dkt. No. 1 at 12, ¶¶ 64–66. However, the attached Deed of Trust only addresses a property in McAllen, Texas. *See* Dkt. No. 15-13 at 3. Even then, the Deed of Trust itself does not explicitly provide that this property as described is located at the address provided by Plaintiff: 2501 West Military Highway, Suite A18, McAllen, Texas 78503. Dkt. No. 1 at 12, ¶¶ 64–66. Rather, the Deed of Trust identifies the property as "Unit 18, Building A, McAllen produce Terminal Market, Phase I, a Condominium Regime established under Condominium Declaration, dated September 27, 1993, filed October 12, 1993 under Clerk's File No. 347782, Amendments filed April 2, 2002 under Document Number 1067579; filed May 15, 2006 under Document Number 1615515 and filed January 11, 2008 under Document Number 1844747, all in the Official Records of Hidalgo County, Texas, together with the undivided interest in and to the common elements of said land and premises, said Market, an addition to the City of McAllen, Hidalgo County, Texas reference to which is here

Records of Hidalgo County.[24] Therein, Defendants named Plaintiff as the beneficiary and conveyed the McAllen property to Atlas, Hall & Rodriguez LLP, the law firm representing Plaintiff, as trustee.[25] The Deed of Trust provides that should Defendants default on the Agreement, the trustee may foreclose on the property and sell the property at auction, with the proceeds going to Plaintiff as the beneficiary.[26] Like the Agreement, the Deed of Trust is signed by all Defendants.[27]

Plaintiff alleges that Defendants failed to remit the first January 15, 2019 payment.[28] Plaintiff sent Defendants notice of default on January 16, 2019.[29] As of December 9, 2019, Plaintiff maintains that Defendants have not remitted any payments to Plaintiff pursuant to the Agreement, and that the principal amount due on the invoices – $610,960.00 –  remains unpaid.[30]

Plaintiff filed its complaint in this Court on September 25, 2019, bringing claims for multiple PACA violations against all Defendants.[31] Plaintiff also brings PACA claims against Defendants Christopher and Diana Torres, solely in their individual capacities, for breach of fiduciary duty and conversion and unlawful retention of PACA trust assets.[32] Plaintiff brings a

---

made for all purposes." Dkt. No. 15-13. at 3. it As such, based on Plaintiff's pleadings, the Court assumes that the property as described in the Deed of Trust is 2501 West Military Highway, Suite A18, McAllen, Texas 78503. *See* Dkt. No. 1 at 12, ¶ 64; *see also* Dkt. No. 15-13 at 3. There is no Deed of Trust on the record addressing the property in Mexico.

[24] Plaintiff provides that the "Deed of Trust was executed on December 11, 2018 and recorded in the Official Records of Hidalgo County, Texas on December 27, 2018 as document 2975332." Dkt. No. 1 at 12, ¶ 65. This matches the notarization date on the Deed of Trust and the recording receipt attached by Plaintiff. *See* Dkt. No. 15-12 at 11; *see also* Dkt. No. 15-13.

[25] Dkt. No. 15-13 at 1.

[26] *Id.* at 5.

[27] *Id.* at 9–11.

[28] Dkt. No. 1 at 5, ¶¶ 21–24.

[29] Dkt. No. 15-14.

[30] Dkt. No. 12 at 5–6, ¶¶ 23–26.

[31] Dkt. No. 1 at 5–10, ¶¶ 25–46. Plaintiff brings claims against all Defendants for "Enforcement of Statutory Trust Provisions of PACA," pursuant to 7 U.S.C. § 499e(c)(1)-(4) (*Id.* at 5–7, ¶¶ 25–33); Violation of the PACA: Failure to Maintain PACA Trust Assets Against All Defendants," pursuant to 7 U.S.C. § 499b(4) (*Id.* at 7–8, ¶¶ 34–38); and "Breach of Duty to Pay Under the PACA," pursuant to 7 U.S.C. § 499b(4) (*Id.* at 8–10, ¶¶ 39–46).

[32] Dkt. No. 1 at 10–12, ¶¶ 47–62. Plaintiff refers to Defendants Christopher and Diana Torres in their individual capacities as "C. Torres" and D. Torres" in the complaint. *Id.* at 1. Plaintiff's claims for breach of fiduciary duty and conversion and unlawful retention of PACA trust assets are brought against "D. Torres" and "C Torres." *See id.* at

single breach of contract claim against Defendant BFP for breach of the parties' original contracts for the shipment of produce.[33] On these claims, Plaintiff requests damages in the amount of $610,960.00; pre-judgment and post-judgment interest; and attorneys' fees and costs.[34] Finally, Plaintiff brings a cause of action against Defendants for "foreclosure" pursuant to the terms of the Agreement and Deed of Trust. On this claim, Plaintiff requests attorneys' fees and costs and an Order of Sale.[35]

All Defendants were served with process on October 5, 2019.[36] After Defendants did not appear or answer within the time provided by the Federal Rules of Civil Procedure, Plaintiff moved for entry of default.[37] The Court granted Plaintiff's motion for entry of default[38] and the Clerk of the Court entered default against Defendants on November 21, 2019.[39] To date, Defendants have not appeared or answered. Plaintiff filed the instant motion for default judgment on December 9, 2019.[40] The Court now turns to its analysis.

## II.   ANALYSIS

### a.   Legal Standard

Obtaining an entry of default judgment is a three-step process: (1) default by the defendant; (2) entry of default by the Clerk of Court; and (3) entry of a default judgment.[41] Here, Defendants have defaulted by failing to answer or otherwise appear in this case. Thus, entry of

---

10–12, ¶¶ 47–62. Accordingly, the Court notes that these claims are only brought against Defendant Christopher and Diana Torres in their individual capacities.

[33] Dkt. No. 1 at 3–5, ¶¶ 10-24.

[34] *Id.* at 13–15.

[35] *Id.* at 12–13, ¶¶ 63–70; *Id.* at 15, ¶ 1.

[36] Dkt. Nos. 6–10.

[37] Dkt. No. 12; FED. R. CIV. P. 12(a)(1)(A)(i) (providing Defendants twenty-one days from the date of service to answer).

[38] Dkt. No. 13.

[39] Dkt. No. 14.

[40] Dkt. No. 15.

[41] *Bieler v. HP Debt Exch., LLC*, 2013 WL 3283722, at *2 (N.D. Tex. June 28, 2013) (citing *New York Life Ins. Co. v. Brown*, 84 F.3d 137, 141 (5th Cir.1996)).

default has been made against them by the Clerk of Court.[42] The only remaining question is whether the third step—actual entry of default judgment—is appropriate.

Federal Rule of Civil Procedure ("Rule") 55(b) authorizes entry of default judgment with court approval. It is a drastic remedy, resorted to only in extreme situations.[43] Nevertheless, default judgment determinations are left to the sound discretion of the district court.[44] Determining the propriety of default judgment is itself a three-step process. *First*, the Court must determine if default judgment is procedurally proper, countenancing six factors:

> (1) whether material issues of fact are at issue; (2) whether there has been substantial prejudice; (3) whether grounds for default are clearly established; (4) whether default was caused by good faith mistake or excusable neglect; (5) the harshness of the default judgment; and (6) whether the court would feel obligated to set aside a default on the defendant's motion.[45]

*Second*, if default judgment is procedurally proper, the Court must determine whether the plaintiff's claims are substantively meritorious.[46] After all, a defendant's failure to answer or otherwise defend does not mean the particular legal claims levied against him are valid.[47] When analyzing the merits of a claim, courts may assume the truth of all well-pled allegations in the plaintiff's complaint.[48] *Third*, if the plaintiff's claims are meritorious, the Court must determine whether the requested relief is appropriate.[49] In particular, Rule 54(c) dictates a default judgment "must not differ in kind from, or exceed in amount, what is demanded in the pleadings."[50]

If the Court determines default judgment is appropriate, it must determine how to calculate damages. The general rule is "unliquidated damages normally are not awarded without

---

[42] Dkt. No. 14.
[43] *Sun Bank of Ocala v. Pelican Homestead & Sav. Ass'n*, 874 F.2d 274, 276 (5th Cir. 1989).
[44] *Mason v. Lister*, 562 F.2d 343, 345 (5th Cir. 1977).
[45] *Bieler*, 2013 WL 3283722, at *2 (citing *Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998)).
[46] *Nishimatsu Const. Co., Ltd. v. Houston Nat. Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975).
[47] *See id*.
[48] *Id*.
[49] *United States v. 1998 Freightliner Vin #: 1FUYCZYB3WP886986*, 548 F. Supp. 2d 381, 384 (W.D. Tex. 2008).
[50] FED. R. CIV. P. 54(c).

an evidentiary hearing."[51] However, there is an exception when the amount claimed is "one capable of mathematical calculation."[52] When this exception applies, there is no need for an evidentiary hearing, and the court can enter default judgment on the briefing. The Court now turns to its analysis.

### b.  Legal Analysis

#### i.  Procedural Properness

Plaintiff shows default judgment is procedurally proper for each of its claims, as the record does not reveal any material issues of fact. The grounds for default are clearly established, as Defendants have not answered or appeared. There is no indication in the record that these failures were somehow made in good faith or otherwise excusable, and for that reason, there is no basis for the Court to expect it would be obligated, upon motion, to vacate default judgment against Defendants as to any claim. Due to Defendants' failure to answer or otherwise appear, default judgment cannot—procedurally speaking—be properly characterized as unduly harsh or prejudicial. For these reasons, default judgment is procedurally proper as to each of Plaintiff's claims against Defendants. The Court must now determine whether Plaintiff's claims are substantively meritorious.

#### ii.  Substantive Merit

As an initial matter, the Court acknowledges that Plaintiff does not explicitly bring a breach of contract claim for Defendants' breach of the parties' Agreement. Rather, Plaintiff brings claims for violations of PACA and breach of the contracts for the sale of produce.[53]

---

[51] *Leedo Cabinetry v. James Sales & Distribution, Inc.*, 157 F.3d 410, 414 (5th Cir. 1998).

[52] *Id.* (citing *James v. Frame*, 6 F.3d 307, 309–10 (5th Cir. 1993)).

[53] Dkt. No. 1 at 3–13, ¶¶ 25–70. Plaintiff brings PACA claims against all Defendants for "Enforcement of Statutory Trust Provisions of PACA," pursuant to 7 U.S.C. § 499e(c)(1)-(4) (*Id.* at 5–7, ¶¶ 25–33); Violation of the PACA: Failure to Maintain PACA Trust Assets Against All Defendants," pursuant to 7 U.S.C. § 499b(4) (*Id.* at 7–8, ¶¶ 34–38); and "Breach of Duty to Pay Under the PACA," pursuant to 7 U.S.C. § 499b(4) (*Id.* at 8–10, ¶¶ 39–46). Plaintiff

Plaintiff requests the following relief for its PACA claims and breach of contract claim: damages in the amount of $610,960.00; pre-judgment and post-judgment interest; and attorneys' fees and costs.[54]

Additionally, Plaintiff brings a separate claim for foreclosure and requests an Order of Sale and attorneys' fees and costs on the grounds that Defendants defaulted on the Agreement, entitling Plaintiff to foreclose on Defendants' property pursuant to the terms of the Agreement and the Deed of Trust.[55] Thus, the Court interprets Plaintiff's foreclosure claim as a breach of contract claim for Defendants' breach of the Agreement, for which Plaintiff requests an Order of Sale to exercise its right to foreclose on Defendants' property.

The Court will separately consider the substantive merit of (1) claims brought by Plaintiff for Defendants' actions outside of the Agreement, for which Plaintiff requests damages, interest, and attorneys' fees and costs; and (2) Plaintiff's foreclosure claim brought under the terms of the Agreement and Deed of Trust, for which Plaintiff requests an Order of Sale and attorneys' fees. The Court first turns to Plaintiff's claim against all Defendants for violations of PACA.

### 1. PACA Claims against All Defendants

Plaintiff brings the following three PACA claims against all Defendants: (1) "Enforcement of Statutory Trust Provisions of PACA," pursuant to 7 U.S.C. § 499e(c)(1)-(4);[56] (2) "Violation of the PACA: Failure to Maintain PACA Trust Assets," pursuant to 7 U.S.C. § 499b(4);[57] and (3) "Breach of Duty to Pay Under the PACA," pursuant to 7 U.S.C. § 499b(4).[58] When analyzing claims for violations of PACA, courts apply a different standard to a corporate

---

also brings PACA claims against Defendants Christopher and Diana Torres, in their individual capacities, for breach of fiduciary duty and conversion and unlawful retention of PACA trust assets. *Id.* at 10–12, ¶¶ 47–62.

[54] Dkt. No. 1 at 13–15.

[55] *See id.* at 12–13, ¶¶ 63–70; *Id.* at 14–15.

[56] *Id.* at 5–7, ¶¶ 25–33.

[57] *Id.* at 7–8, ¶¶ 34–38.

[58] *Id.* at 8–10, ¶¶ 39–46.

defendant than an individual defendant acting on behalf of a corporate defendant because the liability of the individual defendant hinges on the liability of the corporate defendant. Thus, the Court will first consider whether Plaintiff's PACA claims against Defendant BFP have substantive merit. The Court will then turn to Plaintiff's claim against Defendants Christopher and Diana Torres for violations of PACA.

### a.   Defendant BFP

Plaintiff alleges that between October 2, 2017 and January 8, 2018, Plaintiff "sold and shipped to [Defendant BFP] at [Defendant BFP's] request, perishable agricultural commodities for agreed upon selling prices."[59] Plaintiff further alleges that "Defendants accepted said shipments"[60] and failed to remit any payments, even after Plaintiff sent all invoices to Defendant BFP and "repeatedly demanded that [Defendant BFP] pay the sums that are due and owing under these invoices."[61] Based on these events, Plaintiff alleges Defendant BFP violated PACA. The Court first turns to Plaintiff's claim against Defendant BFP for enforcement of PACA's statutory trust provisions.

### i.   *Enforcement of Statutory Trust Provisions of PACA pursuant to 7 U.S.C. § 499e(c)(1)-(4)*

Plaintiff brings a claim against Defendant BFP to enforce the trust provisions of PACA contained in Section 499e(c)(1-4) of the statute. PACA was enacted to promote fair dealing in the sale of fruits and vegetables.[62] PACA requires buyers to hold either the produce or all proceeds or accounts receivable from a subsequent sale of the produce in trust for the benefit of unpaid suppliers until "full payment of the sums owing in connection with such transactions has

---

[59] *Id.* at 3, ¶ 10.
[60] *Id.*
[61] *Id.* at 4, ¶¶ 13–14.
[62] *Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.*, 336 F.3d 410, 413 (5th Cir. 2003).

been received by" the supplier.[63] "The trust automatically arises in favor of a produce seller upon delivery of produce."[64]

　　　Trust beneficiaries may sue in federal district court to enforce PACA's constructive trust provisions.[65] PACA imposes a "strict set of requirements on produce sellers seeking to benefit from the law's protections."[66] In order to recover from a PACA trust, an alleged trust beneficiary must demonstrate by a preponderance of the evidence that:

　　i.　　the goods sold were perishable agricultural commodities;
　　ii.　　the purchaser of the perishable agricultural commodities was a commission merchant, a dealer, or broker;
　　iii.　　the transaction occurred in interstate or foreign commerce;
　　iv.　　full payment on the transaction has not been received by the supplier, seller or agent;
　　v.　　the seller or supplier preserved its trust rights by giving written notice to the purchaser; and
　　vi.　　the time allotted for acceptance of payment did not exceed the maximum amount[67] prescribed by PACA.[68]

　"An unpaid seller loses the benefits of the trust unless it files written notice of its intent to preserve its rights with the [USDA] and the produce dealer,"[69] or provides such notice on its "ordinary and usual billing or invoice statements."[70] To adequately provide notice through invoice statements, PACA requires that the invoice or invoices contain the following language:

The perishable agricultural commodities listed on this invoice are sold subject to the statutory trust authorized by section 5(c) of the Perishable Agricultural Commodities Act, 1930 (7 U.S.C. 499e(c)). The seller of these commodities

---

[63] 7 U.S.C. § 499e(c)(2).

[64] *Eddy Produce LLC v. Sutton Fruit & Vegetable Co.*, No. 3:12-CV-00316-N, 2012 WL 487050, at *2 (N.D. Tex. Feb. 14, 2012) (quoting *Frio Ice, S.A. v. Sunfruit, Inc.*, 918 F.2d 154, 156 (11th Cir. 1990)).

[65] 7 U.S.C. § 499e(c)(5).

[66] *Bocchi Americas Assocs. Inc. v. Commerce Fresh Mktg. Inc.*, 515 F.3d 383, 389 (5th Cir. 2008).

[67] *See La Grasso Bros. Inc. v. Am. Foodservice, L.L.C.*,, No. CIV. 10-10711, 2011 WL 891221, at *5 (E.D. Mich. Mar. 11, 2011) (citing 7 U.S.C. § 499e(c)(3); *Overton Distributors, Inc. v. Heritage Bank*, 340 F.3d 361, 365 (6th Cir.2003)) ("The maximum time for payment for a shipment to which a seller, supplier, or agent can agree and still qualify for coverage under the trust is 30 days after receipt and acceptance. . . [t]his limitation exists because the statute is intended to protect only those produce sellers making short-term credit arrangements.").

[68] *In re Spiech Farms, LLC*, 592 B.R. 152, 162 (Bankr. W.D. Mich. 2018) (citing *A & J Produce Corp. v. Chang*, 385 F.Supp.2d 354, 358 (S.D.N.Y. 2005) (citations omitted).

[69] *Eddy Produce LLC*, No. 3:12-CV-00316-N, 2012 WL 487050, at *2 (quoting *Frio Ice, S.A.*, 918 F.2d at 156).

[70] 7 U.S.C. § 499e(c)(4).

retains a trust claim over these commodities, all inventories of food or other products derived from these commodities, and any receivables or proceeds from the sale of these commodities until full payment is received.[71]

Here, Defendant BFP signed the parties' Agreement. Therein, Defendant BFP stipulates to the following facts, which demonstrate Plaintiff's entitlement to recover from the PACA trust: (1) Defendant BFP "engaged in the buying and selling of perishable agricultural commodities in interstate and/or foreign commerce in wholesale and jobbing quantities as defined by [PACA];[72] (2) Plaintiff shipped to Defendant BFP, at Defendant BFP's request, "perishable agricultural commodities for agreed upon selling prices cumulatively totaling a principal balance of at least $610,960.00;"[73] (3) Defendant BFP received and accepted the commodities without objection;[74] (4) Defendant BFP has not paid anything towards the amount owed;[75] and (5) Plaintiff "has taken all steps necessary to properly preserve [its] PACA Trust rights. . ."[76] The time allotted by Plaintiff for acceptance of payment following shipment did not exceed the thirty-day maximum[77] prescribed by PACA.[78] Moreover, Plaintiff provided adequate notice pursuant to PACA when it sent invoices to Defendants for all amounts due and owing that included the requisite language.[79]

---

[71] *Id.* § 499e(c)(5).

[72] Dkt. No. 15-12 at 2, ¶ iv.

[73] *Id.* ¶ v.

[74] *Id.* ¶ vii.

[75] *Id.* ¶ v.

[76] *Id.* ¶ viii.

[77] *See* Dkt. No. 15-8 (all invoices provided by Plaintiff require payment within thirty days of shipment); *see also La Grasso Bros. Inc.*, No. CIV. 10-10711, 2011 WL 891221, at *5 (citing 7 U.S.C. § 499e(c)(3); *Overton Distributors, Inc.*, 340 F.3d at 365) ("The maximum time for payment for a shipment to which a seller, supplier, or agent can agree and still qualify for coverage under the trust is 30 days after receipt and acceptance. . . [t]his limitation exists because the statute is intended to protect only those produce sellers making short-term credit arrangements.").

[78] *In re Spiech Farms, LLC*, 592 B.R. 152, 162 (Bankr. W.D. Mich. 2018) (citing *A & J Produce Corp. v. Chang*, 385 F.Supp.2d 354, 358 (S.D.N.Y. 2005) (citations omitted).

[79] Dkt. No. 15-8. The invoices provided by Plaintiff contain the following language "The Perishable Agricultural [Commodities] listed on this invoice are sold subject to the statutory [trust] authorized by [S]ection 5 (c) of the Perishable Agricultural [Commodities] Act, 1930 (7 U.S.C. 499e(c)). [T]he seller of these commodities retains a trust claim over these commodities, all inventories of food or other products derived from [these] [commodities], and any receivables or proceeds from the sale of these commodities until full payment is received." *See id.* This passage was revised by the Court to correct multiple spelling errors.

Accordingly, the record indicates that Plaintiff has demonstrated its right to recover under the PACA trust. The Court finds that Plaintiff's PACA claim against Defendant BFP for enforcement of statutory trust provisions of PACA is substantively meritorious. The Court now turns to Plaintiff's claim against Defendant BFP for its failure to maintain PACA trust assets.

*ii. Failure to Maintain PACA Trust Assets pursuant to 7 U.S.C. § 499b(4)*

Pursuant to Section 499b(4) of PACA, it is unlawful for a dealer "to fail to maintain the trust as required under [S]ection 499e(c)" of the statute.[80] When a trust arises in favor of a PACA beneficiary, the dealer is "'required to maintain trust assets in a manner that such assets are freely available to satisfy outstanding obligations to sellers of perishable agricultural commodities,' and any act or omission inconsistent with this responsibility, including dissipation of trust assets, is proscribed."[81] Thus, a dealer's failure to use PACA trust assets to pay the sellers of PACA goods ahead of all other creditors is a violation of the statute.[82]

Here, Plaintiff does not allege that Defendant BFP paid PACA trust assets to a specific person or entity. However, the Court may assume the truth of all well-pled allegations in Plaintiff's complaint.[83] Plaintiff alleges that "Defendants failed to maintain the trust assets and keep them available to satisfy [Defendant BFP's] obligations to Plaintiff."[84] Plaintiff further alleges that "Defendants transferred or diverted the trust assets, and are continuing to so transfer or divert trust assets, namely receivables or proceeds derived from Defendants' sale of produce, to their own use and/or to an unknown third party or parties, in violation of their statutory duties

---

[80] 7 U.S.C. § 499b(4).
[81] *In re Delta Produce, LP*, 521 B.R. 576, 587 (W.D. Tex. 2014), aff'd in part sub nom. *In re Delta Produce, L.P.*, 817 F.3d 141 (5th Cir. 2016), opinion withdrawn and superseded on reh'g in part sub nom. *Matter of Delta Produce, L.P.*, 845 F.3d 609 (5th Cir. 2016), and aff'd in part sub nom. *Matter of Delta Produce, L.P.*, 845 F.3d 609 (5th Cir. 2016) (citing 7 C.F.R. § 46.46(d)(1)).
[82] *See id.*
[83] *Nishimatsu Const. Co., Ltd.*, 515 F.2d at 1206.
[84] Dkt. No. 1 at 6, ¶ 31.

under the PACA to preserve the trust assets for the benefit of Plaintiff."[85] Assuming the truth of Plaintiff's well-pled allegations, the Court finds that Plaintiff's claim that Defendant BFP failed to maintain PACA trust assets in violation of 7 U.S.C. § 499b(4) is substantively meritorious. The Court now turns to Plaintiff's claim against Defendant BFP for breach of the duty to pay under PACA.

### iii.   Breach of Duty to Pay Under PACA pursuant to 7 U.S.C. § 499b(4)

Plaintiff brings a claim for "Breach of Duty to Pay Under the PACA," pursuant to 7 U.S.C. § 499b(4). Courts often refer to this claim as a claim for "failure to make full payment promptly," based on the language of Section 499b(4) making it a violation of federal law for a dealer of perishable commodities to "fail . . . [to] make full payment promptly" to sellers of produce.[86] "Full payment promptly" means payment within ten days after the buyer accepts the produce.[87] Trust beneficiaries may also sue in federal district court to enforce PACA's requirement for prompt payment.[88]

Plaintiff alleges Defendant BFP did not make full payment promptly to Plaintiff within ten days, as Defendant BFP has not made a single payment to Plaintiff for the amounts owed on the invoices. Accordingly, the Court finds that Plaintiff's claim that Defendant BFP did not make full payment promptly to Plaintiff in violation of PACA is substantively meritorious. The Court now turns to Plaintiff's PACA claims against Defendants Christopher and Diana Torres for enforcement of the statutory trust, failure to maintain PACA trust assets, and failure to make full payment promptly.

---

[85] *Id.* at 7, ¶ 32 (citing 7 C.F.R. § 46.46(c)).
[86] 7 U.S.C. § 499b(4).
[87] *Bocchi Americas Assocs. Inc*, 515 F.3d at 388 (citing See 7 C.F.R. § 46.2(a)(5)(11)).
[88] 7 U.S.C. § 499b(4).

b.  Defendants Christopher and Diana Torres

The Court now considers whether Plaintiff's claims against Defendants Christopher and Diana Torres, in both their individual capacities and capacities as co-trustees of C&D Holdings, for enforcement of the statutory trust, failure to maintain PACA trust assets, and failure to make full payment promptly are substantively meritorious.

The Fifth Circuit held in *Goldman-Hayden Co.* that where a corporation commits a breach of a PACA trust or otherwise commits a PACA violation, certain officers or directors of that corporation may be held personally liable for the violations of the corporation.[89] The Fifth Circuit explained: "PACA liability attaches first to the licensed . . . [dealer] . . . of perishable agricultural commodities," but if "the assets of the licensed . . . [dealer] . . . are insufficient to satisfy the PACA liability, then others may be held secondarily liable if they had some role in causing the corporate trustee to commit the breach of trust."[90] A person plays such a role in causing the corporate dealer's breach of trust if they are an "individual [shareholder], [officer], or [director] of a corporation who [is] in a position to control trust assets, and who breach[es] their fiduciary duty to preserve those assets."[91] An individual breaches their fiduciary duty and is personally liable for the PACA violation of the licensed dealer where they are in the position to control the trust assets and do not preserve them for the beneficiaries of the trust.[92]

Because PACA liability first attaches to the licensed dealer, the liability of Defendants Christopher and Diana Torres is linked to Defendant BFP's liability to Plaintiff under PACA. The Court has found in this Order that Plaintiff's PACA claims against Defendant BFP for enforcement of the statutory trust, failure to maintain PACA trust assets, and failure to make full

---

[89] *See Golman-Hayden Co. v. Fresh Source Produce Inc.*, 217 F.3d 348, 351 (5th Cir. 2000).
[90] *Id.*
[91] *Id.*
[92] *See In re Delta Produce, LP*, 521 B.R. at 593.

payment promptly are substantively meritorious. Therefore, the Court need only consider whether Defendants Christopher and Diana Torres, individually and in their capacities as co-trustees of C&D Holdings, can be held personally liable for Defendant BFP's PACA violations.

As an initial matter, Plaintiff does not clarify whether its allegations regarding the role of Defendants Christopher and Diana Torres in Defendant BFP's operations are made against Defendants Christopher and Diana Torres in their individual capacities or their capacities as co-trustees of C&D Holdings. The Court can only assume that allegations made against "Defendants Christopher and Diana Torres" in an unspecified capacity are allegations made against them in their individual capacities. The Court will first consider the liability of Defendants Christopher and Diana Torres in their individual capacities.

Plaintiff alleges that Defendants "Christopher Torres and Diana Torres are corporate officers of [Defendant BFP] and are listed as such on [Defendant BFP's] PACA license."[93] Plaintiff further alleges that Defendants "Christopher Torres and Diana Torres controlled or had a duty to control [Defendant BFP's] operations and financial dealings, including those involving the PACA trust assets."[94] Moreover, Defendants Christopher and Diana Torres admit to these allegations in the parties' Agreement. Therein, Defendants Christopher and Diana Torres, in their individual capacities, stipulate that "[Defendants Christopher and Diana Torres] during all times mentioned herein were, officers, directors, shareholders, managers, and/or members of [Defendant BFP] and therefore are and during all times mentioned herein were, statutory PACA trustees subject to the trust provisions of PACA. . . ."[95] Assuming the truth of Plaintiff's well-pled allegations and considering the stipulated facts contained in the parties' Agreement, the Court

---

[93] Dkt. No. 15 at 8, ¶ 36 (citing to Dkt. No. 15-7, Defendants' PACA license).
[94] *Id.*
[95] Dkt. No. 15-12 at 2, ¶ xii.

finds that Defendants Christopher and Diana Torres, in their individual capacities, were in the position to control trust assets held by Defendant BFP and breached their fiduciary duty to do so.

Accordingly, Defendants Christopher and Diana Torres, in their individual capacities, can be held personally liable for the PACA violations of Defendant BFP outlined in this Order. Thus, Plaintiff's claims against Defendants Christopher and Diana Torres, in their individual capacities, for enforcement of the statutory trust, failure to maintain PACA trust assets, and failure to make full payment promptly, are substantively meritorious. The Court now turns to the liability of Christopher and Diana Torres in their capacities as co-trustees of C&D Holdings.

Plaintiff makes no specific allegations that Defendants Christopher and Diana Torres, in their capacities as co-trustees of C&D Holdings, are officers or directors of Defendant BFP whose PACA liability can be derived from that of Defendant BFP. Only the Agreement provides any detail regarding the relationship between Defendant BFP and C&D Holdings. The Agreement provides that C&D Holdings "is the owner of  real property located at 2501 West Military Highway, Suite A18, McAllen, Texas 78503."[96] This property appears to have been utilized by Defendant BFP as a warehouse.[97] There is nothing in the record to suggest that Defendants Christopher and Diana Torres exercised control over PACA assets in their capacities as co-trustees of a company that owned a piece of property utilized by Defendant BFP. Thus, the Court finds that Plaintiff's attempt to allege PACA liability against Defendants Christopher and Diana Torres, in their capacities as co-trustees of C&D Holdings, does not have substantive merit. The Court hereby **DENIES** Plaintiff's PACA claims against Defendants Christopher and Diana Torres, in their capacities as co-trustees of C&D Holdings.

---

[96] *Id.* ¶ xiii.
[97] *See id.*

Accordingly, the Court finds Plaintiff's claim against Defendant BFP and Defendants Christopher and Diana Torres, in their individual capacities, for enforcement of the statutory trust, failure to maintain PACA trust assets, and failure to make full payment promptly, are substantively meritorious. The Court also finds that these same claims against Defendants Christopher and Diana Torres, in their capacities as co-trustees of C&D Holdings, are not substantively meritorious. In light of this, and the fact that Plaintiff requests identical damages for all of its claims except foreclosure,[98] the Court need not consider the substantive merit of Plaintiff's claims against Defendants Christopher and Diana Torres, in their individual capacities, for breach of fiduciary duty and unlawful conversion of PACA assets, or Plaintiff's breach of contract claim against Defendant BFP. The Court now turns to Plaintiff's foreclosure claim.

## 2.  Foreclosure

Plaintiff titles its final claim "foreclosure," and argues that pursuant to the terms of the Agreement and a Deed of Trust executed by Defendants, Plaintiff is "entitled to foreclose upon" two properties owned by Defendants. Plaintiff alleges that "Defendants have failed to pay all of the amounts due and outstanding under the [Agreement], the first payment which was due on January 15, 2019.[99] Plaintiff requests relief in the form of an Order of Sale and attorneys' fees and costs. As the Court discusses elsewhere in this Order, the Court interprets Plaintiff's "foreclosure" claim as a breach of contract claim for Defendants' default of the Agreement, which is secured by the Deed of Trust.

The elements of a breach of contract claim in Texas include: "(1) the existence of a valid contract; (2) performance by plaintiff; (3) breach of the contract by the defendant; and (4)

---

[98] For its PACA and breach of contract claims, Plaintiff requests the following relief: damages in the amount of $610,960.00; pre-judgment and post-judgment interest; and attorneys' fees and costs. Dkt. No. 1 at 13–15.
[99] *Id.* at 12, ¶ 68.

damages sustained by plaintiff as a result of the breach."[100] Plaintiff bears the burden of demonstrating it suffered a loss resulting from the breach.[101]

Considering the well-pled allegations contained in Plaintiff's complaint, the Court finds that Plaintiff's breach of contract claim does not have substantive merit. The Agreement constitutes a valid contract – it is signed by all parties and memorializes Plaintiff's promise to dismiss the formal USDA complaint against Defendants within ten days of the Agreement in exchange for Defendants' promise to pay their debt to Plaintiff in gradual installments. However, Plaintiff does not plead and there is no indication on the record that Plaintiff performed its obligation under the Agreement. The Agreement requires Plaintiff to dismiss its formal USDA complaint. Plaintiff only maintains that it has performed all "conditions, covenants, and obligations required to be performed by [Plaintiff] under the agreements for the sale of the perishable agricultural commodities." [102] Yet, Plaintiff does not maintain that it dismissed its formal complaint with USDA in performance under the parties' Settlement Agreement. Plaintiff seeks to foreclose on Defendants' properties pursuant to the terms of the Agreement, which is secured by the Deed of Trust, but Plaintiff does not offer evidence that it has performed under the terms of the Agreement to make its claim for Defendants' breach of the Agreement substantively meritorious.

Moreover, while it is unclear from the complaint, Plaintiff appears to request that this Court issue an Order of Sale for both properties discussed in the Agreement, and alleges that the Agreement "is secured by a Deed of Trust on certain real property located at 2501 West Military Highway, Suite A18, McAllen, Texas 78503 and fraccion "B" del lote de terreno ubicado en la

---

[100] *Sport Supply Group, Inc. v. Columbia Cas. Co.*, 335 F.3d 453, 465 (5th Cir. 2003).
[101] *Taub v. Hous. Pipeline Co.*, 75 S.W.3d 606, 616 (Tex. App. 2002).
[102] *See* Dkt. No. 1 at 4, ¶ 16.

ex Hacienda de Encarnacion de Guzman, municipality of Saltillo, Mexico."[103] However, the Deed of Trust attached by Plaintiff applies to only the McAllen property and does not mention a property in Mexico. Plaintiff fails to support its request for foreclosure with appropriate documents identifying the property to be foreclosed.

For the aforementioned reasons, the Court finds that Plaintiff's "foreclosure" claim, as it is currently pled, does not have substantive merit. Accordingly, the Court hereby **DENIES WITHOUT PREJUDICE** Plaintiff's motion for default judgment as to the "foreclosure" claim. To the extent Plaintiff wishes to further pursue this claim against Defendants, the Court **ORDERS** Plaintiff to file a motion with the Court by **Friday, May 22, 2020**. Therein, Plaintiff should (1) specify what cause of action it brings; and (2) attach a Deed of Trust applicable to the Mexico property or provide an explanation for the absence of this document in the record. The Court now turns to Plaintiff's requested relief.

### iii.  Requested Relief

Finally, the Court is able to determine whether the requested relief is appropriate[104] pursuant to Rule 54(c). Rule 54(c) dictates that a default judgment "must not differ in kind from, or exceed in amount, what is demanded in the pleadings."[105]

#### 1.  *Damages*

Plaintiff requests damages in the amount of $610,960.00. The Court finds Plaintiff's request for $610,960.00 warranted, as this amount corresponds with the amounts owed on the

---

[103] *Id.* at 12, ¶ 64.
[104] *United States v. 1998 Freightliner Vin #: 1FUYCZYB3WP886986*, 548 F. Supp. 2d 381, 384 (W.D. Tex. 2008).
[105] FED. R. CIV. P. 54(c).

invoices.[106] Moreover, Defendants stipulate to the fact that this is the total amount owed on the invoices.[107] Thus, the Court **AWARDS** Plaintiff $610,960.00.

### 2. *Pre-Judgment Interest*

The Court finds that Plaintiff's request for $34,751.50 in pre-judgment is not appropriate. Plaintiff requests five percent of $610,960.00 annually from the date of September 2, 2018, 180 days after Defendants received notice of the claim from the USDA, to the date of judgment.[108] Plaintiff cites to a decision by the Northern District of Texas in *Paisano Capital SA de CV v. 23 Tex. Produce, Inc.*, wherein the court made the determination to calculate 5.5% pre-judgment interest in accordance with Section 304.101 of the Texas Finance Code on the grounds that there was no enabling statute governing the award.[109] However, Plaintiff's reliance on this case ignores this Court's decision in *Paisano Capital SA de CV v. Velazquez*, wherein the Court expressly declined to adopt the Northern District's calculation of pre-judgment interest in light of the Texas Supreme Court's decision in *Johnson & Higgins of Texas, Inc. v. Kenneco Energy, Inc*.[110] In *Paisano Capital SA de CV v. Velazquez*, the Court noted that  "[i]n *Johnson*, the Supreme Court of Texas held that where a state enabling statute does not apply to a particular claim, 'prejudgment interest accrues at the rate for postjudgment interest.'"[111] The *Johnson* court utilized the post-judgment interest rate, a decision that was later upheld by the Fifth Circuit in

---

[106] *See* Dkt. No. 15-8; *see also* Dkt. No. 15-9 (Accounting of Attorneys' Fees).
[107] Dkt. No. 15-12 at 2, ¶ v.
[108] Dkt. No. 12 at 8–10, ¶¶ 38–42.
[109] *Paisano Capital SA de CV v. 23 Texas Produce, Inc.*, No. 3:19-CV-0852-B, 2019 WL 3239152, at *5 (N.D. Tex. July 18, 2019).
[110] *Paisano Capital SA de CV v. Velazquez*, No. 7:19-CV-078, 2019 WL 6649294, at *14 n. 146 (S.D. Tex. Dec. 6, 2019) (citing *Johnson & Higgins of Texas, Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 532 (Tex. 1998)).
[111] *Id.*

*Int'l Turbine Servs., Inc. v. VASP Brazilian Airlines* and adopted by this Court in *Paisano Capital SA de CV v. Velazquez*.[112]

Because, as Plaintiff admits,[113] there is no applicable enabling statute, the Court once again finds it appropriate to set the pre-judgment interest rate at the post-judgment interest rate. Pre-judgment interest begins to accrue on the earlier of (1) 180 days after the date a defendant receives written notice of a claim or (2) the date suit is filed.[114]

Currently, the post-judgment interest rate is 0.17%.[115] Here, interest began to accrue on September 2, 2018, 180 days after Defendants received written notice of Plaintiff's PACA claims from the USDA.[116] Accordingly, Plaintiff is entitled to pre-judgment interest in the amount of $1,739.00.[117]

### 3.  *Post-Judgment Interest*

Plaintiff requests post-judgment interest at the rate set forth by 28 U.S.C. § 1961.[118] The Court finds this request appropriate. Currently, the post-judgment interest rate is 0.17%.[119] Accordingly, the Court finds Plaintiff is entitled to post-judgment interest, which shall accrue at the rate of 0.17% from the date of this Order.

---

[112] *See Int'l Turbine Servs., Inc. v. VASP Brazilian Airlines.* 278 F.3d 494, 499 (5th Cir. 2002); *see also Paisano Capital SA de CV v. Velazquez,* No. 7:19-CV-078 at *14 n. 146.

[113] Dkt. No. 12 at 10, ¶ 41 ("Here, pre-judgment interest is left to the Court's determination as there is no statute that governs the award.").

[114] *Johnson*, 962 S.W.2d at 529.

[115] *See* 28 U.S.C. § 1961(a) (2000) (Post-judgment interest "shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment."); http://www.txs.uscourts.gov/page/post-judgment-interest-rates (last visited 5/6/2020).

[116] Defendants received notice of Plaintiff's PACA claims from the USDA on March 6, 2018. *See* Dkt. No. 15-11.

[117] 0.17 percent of $610,960.00 is $1,038.63. Because pre-judgment interest accrues annually, Plaintiff is entitled to $1,038.63 for the interest accrued from September 2, 2018 to September 2, 2019. Pre-judgment interest accrues at approximately $2.84 per day. Therefore, Plaintiff is entitled to $700.00 for the pre-judgment interest accrued from September 3, 2019 to May 6, 2020. In sum, Plaintiff is entitled to $1,738.63 in pre-judgment interest, which the Court rounds to $1,739.00.

[118] Dkt. No. 15 at 11–12, ¶ 46.

[119] *See* 28 U.S.C. § 1961(a) (2000) (Post-judgment interest "shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment."); http://www.txs.uscourts.gov/page/post-judgment-interest-rates (last visited 5/6/2020).

### 4.   *Attorneys' Fees and Costs*

Plaintiff requests attorneys' fees in the amount of $15,145.50.[120] In support of its request, Plaintiff attaches an affidavit by Plaintiff's attorney, Allison N. Boyle[121] and a summary of the hours billed by Ms. Boyle's firm, Atlas, Hall & Rodriguez, LLP.[122] In her affidavit, Ms. Boyle indicates that Plaintiff incurred attorneys' fees totaling $6,141.50 as a result of the work completed by Atlas, Hall & Rodriguez, LLP. However, Ms. Boyle also indicates that Plaintiff was represented in this matter by the firm Rynn and Janowsky. Ms. Boyle claims Plaintiff incurred attorneys' fees totaling $9,004.00 as a result of the work completed by Rynn and Janowsky. Thus, Plaintiff's motion for default judgment requests attorneys' fees of $15,145.50 for the work completed by Atlas, Hall & Rodriguez, LLP and Rynn and Janowsky.

The Court declines to award this amount for two reasons. First, while Ms. Boyle includes necessary details regarding her hourly rate and the hourly rate of another employee at her firm who worked on this matter, no such information is provided for the work completed by Rynn and Janowsky. Second, there is nothing in the record indicating how many hours of work were performed by Rynn and Janowsky for the $9,004.00 in attorneys' fees allegedly billed. There is no affidavit from an attorney employed by Rynn and Janowsky and there are no documents from the firm evidencing the hours billed. As such, the Court does not have adequate information by which it can determine whether the attorneys' fees requested for the work performed by Rynn and Janowsky are reasonable. Thus, the Court will only consider whether the attorneys' fees requested for the work completed by Atlas, Hall & Rodriguez, LLP are reasonable.

---

[120] Dkt. No. 15 at 11, ¶ 45.
[121] Dkt. No. 15-15.
[122] Dkt. No. 15-16.

23 / 26

Ms. Boyle indicates that Atlas, Hall & Rodriguez, LLP billed 34.40 hours on this matter.[123] Ms. Boyle also provides that the hours were billed by Ms. Boyle at $185.00 per hour and a paralegal, Merriwood Ferguson, at $120.00 per hour.[124] However, the accounting documents attached by Plaintiff indicate that another attorney – E. Michael Rodriguez – billed 0.50 hours at $325.00 per hour.[125] Ms. Boyle states that she has been licensed to practice law since 2013.[126] Mr. Rodriguez's experience level is not provided. The Court first considers the hours billed by Ms. Boyle.

Ms. Boyle billed 29.30 hours on this matter at a rate of $185.00 per hour.[127] Based on the last average billing rates provided by the State Bar of Texas in 2015, $250.00 is a reasonable hourly rate for an attorney with three to six years of experience.[128] Accordingly, the Court finds that Ms. Boyle's hourly rate of $185.00 is reasonable. The Court hereby awards Plaintiff $5,421.00 for the 29.30 hours billed by Ms. Boyle. The Court now turns to the hours billed by Mr. Rodriguez.

Mr. Rodriguez billed 0.50 hours on this matter at a rate of $325.00 per hour. Since Plaintiff does not provide the Court with Mr. Rodriguez's experience level, the Court takes judicial notice of Mr. Rodriguez's many years of practice before this Court. Based on the last average billing rates provided by the State Bar of Texas in 2015, $300.00 is a reasonable hourly rate for an attorney with sixteen to twenty years of experience.[129] Thus, the Court finds Mr.

---

[123] Dkt. No. 15-15 at 3, ¶ 12.

[124] *Id.* ¶¶ 10–11.

[125] Dkt. No. 15-16 at 1.

[126] Dkt. No. 15-15 at 1, ¶ 2.

[127] *See* Dkt. No. 15-16.

[128] *See* State Bar of Texas 2015 Hourly Rate Fact Sheet, 12 (2016) https://www.texasbar.com/AM/Template.cfm?Section=Demographic_and_Economic_Trends&Template=/CM/ContentDisplay.cfm&ContentID=34182 (providing $250.00 as the median hourly fee for a lawyer with three to six years of experience in 2015 and basing years of experience on year first licensed in any jurisdiction). The Texas Bar's 2015 report is its most recent.

[129] *See* State Bar of Texas 2015 Hourly Rate Fact Sheet, 12 (2016)

Rodriguez's hourly rate of $325.00 is reasonable.   Accordingly, the Court awards Plaintiff $163.00 for the 0.50 hours billed by Mr. Rodriguez. The Court now turns to the hours billed by Merriwood Ferguson.

Merriwood Ferguson billed 4.50 hours on the case at $120.00 per hour.[130] Because Merriwood Ferguson is a paralegal and the Court is unaware of his or her experience level, the Court provides attorneys' fees at the low end of the applicable range. Based on the last average billing rates provided by the State Bar of Texas in 2015, $200.00 is a reasonable hourly rate for an attorney with two years or less of experience.[131] Accordingly, the Court finds that Merriwood Ferguson's hourly rate of $120.00 is reasonable. The Court awards Plaintiff $540.00 for the 4.50 hours billed by Merriwood Ferguson.

In sum, the Court hereby **AWARDS** Plaintiff **$6,124.00** in attorneys' fees. The Court now turns to Plaintiff's request to recover its costs.

Plaintiff also seeks to recover costs in the amount of $667.91, which resulted from filing fees, fees for service of process, fees for legal research, and postage.[132] The Court finds this request reasonable. The Court hereby **AWARDS** Plaintiff $668.00 in costs.

### III.   HOLDING

For the reasons stated herein, the Court hereby **GRANTS IN PART** and **DENIES IN PART** Plaintiff's motion for default judgment.[133] Specifically, the Court **GRANTS** Plaintiff's

---

https://www.texasbar.com/AM/Template.cfm?Section=Demographic_and_Economic_Trends&Template=/CM/ContentDisplay.cfm&ContentID=34182 (providing $300.00 as the median hourly fee for a lawyer with sixteen to twenty years of experience in 2015 and basing years of experience on year first licensed in any jurisdiction). The Texas Bar's 2015 report is its most recent.

[130] *See* Dkt. No. 15-16.

[131] *See* State Bar of Texas 2015 Hourly Rate Fact Sheet, 12 (2016)

https://www.texasbar.com/AM/Template.cfm?Section=Demographic_and_Economic_Trends&Template=/CM/ContentDisplay.cfm&ContentID=34182 (providing $200.00 as the median hourly fee for a lawyer with two years or less of experience in 2015 and basing years of experience on year first licensed in any jurisdiction). The Texas Bar's 2015 report is its most recent.

[132] Dkt. No. 15-15 at 3, ¶ 13.

motion for default judgment as to its PACA claims against Defendant BFP and Defendants Christopher and Diana Torres, in their individual capacities, for enforcement of the statutory trust, failure to maintain PACA trust assets, and failure to make full payment promptly. The Court **DENIES AS MOOT** all remaining claims against Defendants Christopher and Diana Torres, in their individual capacities.[134] The Court **DENIES** default judgment as to all claims against Defendant Christopher and Diana Torres in their capacities as co-trustees of C&D Holdings. The Court also **DENIES** default judgment as to Plaintiff's cause of action for "foreclosure."

The Court **AWARDS** Plaintiff **$610,960.00** in damages, plus post-judgment interest at a rate of **0.17%** from the date of this Order.[135] The Court also awards Plaintiff **$1,739.00** in pre-judgment interest and a total of **$6,792.00** for attorneys' fees and costs.

The Court further **ORDERS** Plaintiff to advise the Court regarding whether it intends to further pursue its claim for "foreclosure" against Defendants by **Friday, May 22, 2020**.

IT IS SO ORDERED.

DONE at McAllen, Texas, this 6th day of May, 2020.

Micaela Alvarez
United States District Judge

---

[133] Dkt. No. 15.

[134] These include Plaintiff's claims against Defendant Christopher and Diana Torres, in their individual capacities, for breach of fiduciary duty and conversion and unlawful retention of PACA trust assets.

[135] *See* 28 U.S.C. § 1961(a) (2000) (Post-judgment interest "shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment."); http://www.txs.uscourts.gov/page/post-judgment-interest-rates (last visited 5/6/2020).